### James M. Hildreth vs. Abel Conant.

A uemise for years of premises before demised at will is a termination of the tenancy at will, and the tenant is thenceforth tenant by sufferance, and not entitled to notice to quit.

Rent, payable quarterly by A., a tenant at will, was in arrear, and the landlord, for that reason, gave him written notice to quit, and leased the premises to B. for years. *Held*, that B. might maintain an action, on the Rev. Sts. *c.* 104, against A., for possession of the premises, without first making an entry or giving further notice to quit; although A. had no notice that the landlord had leased the premises to B.

This was an action on the Rev. Sts. *c.* 104, commenced on the 5th of November 1844, to recover possession of a tenement in Dracut, alleged to be held by the defendant unlawfully, and against the right of the plaintiff.

At the trial in the court of common pleas, before *Wells*, C. J. it was in evidence that the defendant had occupied the premises which were claimed, since June 1843, paying rent, quarterly, to Israel Hildreth and Josiah Wood, jr. ; that in October 1844, and before the 7th of said October, the defendant admitted that he owed between three and four dollars of the rent for the quarter then last past ; that said Israel and Josiah executed a lease of said premises to the plaintiff, dated October 28th 1844, for three years, commencing on the 1st of said October; and that the following notice was served on the defendant, on the 7th of said October : " To Abel Conant of Dracut. You are hereby notified that you remove yourself, family and effects, from the tenement you now occupy as tenant under us, forthwith, as your rent is in arrear for the last quarter ; or legal process will be taken for your removal.

" Lowell, October 2d 1844. Josiah Wood, jr.
Israel Hildreth."

It was also in evidence that a notice was served on the defendant, by the plaintiff, on the 28th of October 1844, of this tenor : " To Abel Conant, Esq. You are hereby notified that I have leased from Messrs. Wood and Hildreth the building you now occupy, and the appurtenances, for the term of three years from the first day of October instant ;

and you will govern yourself accordingly, by paying what rent may be due from that time to me, and that you leave and deliver up the premises aforesaid, within a reasonable time from the receipt hereof; and seven days are given you for that purpose. If you are not then out, legal measures will be taken for your removal. Lowell, October 28th 1844.

James M. Hildreth."

There was no evidence that the plaintiff made any entry upon the premises claimed, or that the lease aforesaid was ever shown to the defendant, or that any notice was given to him from said Israel and Josiah, before the commencement of this action, that they had leased the premises to the plaintiff.

The defendant contended that this action could not be maintained upon the foregoing evidence ; but the judge ruled otherwise. A verdict was found for the plaintiff, and the defendant alleged exceptions.

*Knowles*, for the defendant.

*B. F. Butler*, for the plaintiff.

SHAW, C. J. This suit originated in a complaint before the police court of the city of Lowell, founded on chapter 104 of the revised statutes, which provides remedies in cases of forcible entry and forcible detainer, and against tenants holding over. It embodies in substance the provisions of two old statutes upon these two subjects, and to a certain extent modifies both. The commissioners for revising the statutes have some useful explanatory notes. Their report, however, was not fully adopted, but some considerable alterations in the modes of proceeding were subsequently adopted by the legislature.

It has been suggested, I believe, that there is some discrepancy in the decisions on this subject ; but we think, if there is any such apparent discrepancy, it arises from a change of the law itself. In *Sacket* v. *Wheaton*, 17 Pick. 103, it is stated under a *semble*, that such a complaint may be maintained by the person having the right of possession, against a party in possession without right, whether the relation of land-

lord and tenant had subsisted between them or not.    In *Saun-
ders* v. *Robinson*, 5 Met. 343, it was held that where the
relation of landlord and tenant does not exist, a party entitled
to possession cannot have this summary process, by Rev. Sts.
*c.* 104, unless there has been a forcible entry or a forcible
detainer.

The *St.* of 1825, *c.* 89, entitled "an act providing further
remedies for landlords and tenants," under which the case
of *Sacket* v. *Wheaton* was decided, seems broader in its enact-
ing words than in its title.    It provides, § 1, that "where the
tenant or occupant of any house or tenement shall hold such
house or tenement without right, and after notice in writing
to quit the same, whoever has the right of possession thereof
may summon such tenant or occupant," &c.    This, though i
embraces the cases of tenants at will, for years, &c. holding
over, is not confined to them.    Now, as it is manifest that almost
every real action draws in question the right of possession, and
as the right of possession usually follows the right of property,
this summary process would lie in nearly every case where a
controversy arises about title to real estate. · Hence the re-
mark of the commissioners in their report, note to *c.* 104, § 20,
that "if the process under *St.* 1825 should be applied indis-
criminately to every tenant or occupant of land, who should
refuse to quit it upon the demand of any adverse claimant, it
might supersede the writs of trespass and of entry, and bring
every disputed title to be tried on this summary process."   For
this reason they framed their provision as it was substantially
adopted by the legislature, so as to bring the law to what
they understood to have been the intention of the legislature
in the act of 1825, namely, "to furnish a remedy for a land-
lord against his lessee, when the latter should refuse to quit
the premises on the determination of the lease."    The clause
in the Rev. Sts. *c.* 104, § 2, after providing for the case when
an entry is forcibly made, or, after a peaceable entry, the pos-
session shall be held by force, stands thus : " And also when
the lessee of any lands or tenements, or any person holding
under such lessee, shall hold possession of the demised prem-

ises, without right, after the determination of the lease, either by its own limitation, or by notice to quit, as provided in the sixtieth chapter, the person entitled to the premises may be restored to the possession thereof," &c. It was after this law went into operation, and under its provisions, that the case of *Saunders* v. *Robinson* was decided. That case was framed and tried on the other clause in the same section, as a forcible entry, or forcible detainer, and the point, that it might perhaps be sustained as a case between landlord and tenant, was not made at the trial, nor raised by the bill of exceptions.

In the present case, it appears to the court that the complaint was rightfully brought and can be maintained ; and that the direction of the judge was right. It appears that the respondent had been tenant at will of the premises, to Israel Hildreth and Josiah Wood, jr., and that prior to October 7th 1844 his rent was in arrear. On that day they served him with a written notice to quit, dated October 2d, assigning as a reason that his rent was in arrear for the last quarter. It is provided by Rev. Sts. *c.* 60, § 26, that all leases at will may be determined by either party, by three months' notice in writing, and if the rent be payable at shorter intervals, then a length of notice equal to such interval; "and in all cases of neglect or refusal to pay the rent due on a lease at will, fourteen days' notice to quit, given in writing by the landlord, to the tenant, shall be sufficient to determine the lease." This latter rule was precisely applicable, and strictly complied with. Notice was given in writing to the respondent by the landlords, on the ground that the rent was in arrear ; and therefore, at the expiration of fourteen days, the lease at will terminated.

What then was the condition of the respondent? He was saved only from being a trespasser and wrongdoer, by the fact that he once had a lawful entry. He was a tenant at sufferance, with no right of possession whatsoever. Tenant at sufferance has no right to any notice to quit. *Kinsley* v. *Ames,* 2 Met. 29. Note of commissioners to *c.* 60, § 26. The

lease being determined, this was the proper process in favor of the person entitled to the premises, to be restored to the possession thereof. In *Hollis* v. *Pool,* 3 Met. 350, the leased estate was alienated by the landlord, which of itself determined the will and the estate dependent on it, and the purchaser was held entitled to this process.

And this, we think, is founded on correct principles ; because the right of possession usually follows the right of property, and when a landlord aliens in fee, he grants the right of possession ; and the right to obtain possession, by this process, follows by force of the statute.

In the present case, the landlords, after a notice to the tenant to quit, and an expiration of the time required by law, made a lease for years to the plaintiff, which they had a perfect right to do ; and this made him the person entitled to the premises, and gave him a right to this process, to be restored to the possession.

It was· urged in the argument, that at the time of the commencement of the process, the plaintiff was a stranger to the defendant, and that the relation of landlord and tenant did not subsist between them. The answer is, that the statute does not require it. It is sufficient that his possession commenced in the character of lessee, or is held under one whose possession did so commence, and that he holds over without right, against any body entitled to possession.

It was also urged that his landlords had not given him notice that they had leased the premises to the plaintiff, and that he would not be warranted in surrendering the key to him. The answer is, that it was not necessary for them to give him such notice. They gave him notice to quit, which put an end to his right, and he must afterwards resist the right of any one else at his peril. If he apprehended danger from surrendering any badge of possession to a stranger, he had an easy mode of avoiding the embarrassment, by surrendering it to his landlords, as required by their notice. And the same suggestion answers the objection that the notice from the plaintiff was not sufficient. We do not

perceive why it is not sufficient ; but if it was not, we think the objection could not avail, because *no notice* was necessary.

*Exceptions overruled.*